**UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:

| | |
|---|---|
| **DWAYNE G. DEER,** | **CASE NO. 06-02460-NPO** |
| **DEBTOR.** | **CHAPTER 7** |
| | |
| **SHELBY GARDNER** | **PLAINTIFF** |
| V. | **ADV. PROC. 07-00060-NPO** |
| **DWAYNE G. DEER** | **DEFENDANT** |

**MEMORANDUM OPINION GRANTING COMPLAINT
TO DETERMINE DISCHARGEABILITY OF DEBT**

On February 11, 2008, there came on for hearing (the "Hearing"), the Complaint Under Section 523(a) (the "Adversary Complaint") (Adv. Dk. No. 1) filed by Shelby Gardner ("Gardner") and the Response to Complaint Under Section 523(a) (the "Response to Adversary Complaint") (Adv. Dk. No. 4) filed by Dwayne G. Deer ("Deer"). In this adversary proceeding (the "Adversary"), J. Walter Newman IV represented Gardner, and Gregory J. Faries represented Deer. At the Hearing, Gardner amended his Adversary Complaint to include the 11 U.S.C. § 523(a)(4)[1] claim only and to delete the § 523(a)(6) claim. The Court, having considered the testimony and evidence presented at the Hearing, concludes for the following reasons that the Adversary Complaint is well taken and should be granted as discussed herein.[2]

---

[1] Hereinafter all code sections refer to the United States Bankruptcy Code unless otherwise noted.

[2] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. Jurisdiction

This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157 (b)(2)(A), (I), and (O). Notice of the Hearing on the Adversary Complaint and Response to Adversary Complaint was proper under the circumstances.

## II. Facts

A.   The Relevant Individuals

   1.   Gardner is an adult resident citizen of Compton, California. He is employed as a grocery clerk and has invested in real estate as an additional career.

   2.   Deer is an attorney who at all times relevant to this proceeding was licensed to practice in the State of Mississippi. During the pertinent time period, Deer had practiced law for approximately ten (10) years and was experienced in real estate transactions.

   3.   J. Todd Phillips ("Phillips") is an adult resident citizen of McComb, Mississippi. During the relevant time, Phillips was the President/CEO, Director, and 100% shareholder of Todd Phillips Investments, Inc. ("TPI")[3], a chapter 11 debtor in a case pending before this Court as Case No. 06-01862-NPO. Derek A. Henderson was appointed the chapter 11 trustee in TPI. (TPI Dk. No. 129).

   4.   Dawn Stinson ("Stinson") is a former legal secretary for Deer. Stinson left Deer's employ to work for Phillips. She worked for Phillips at all times pertinent to this Adversary.

   5.   Gary L. Honea ("Honea") is an attorney who practices in Magnolia, Mississippi. Gardner hired Honea to represent him in a lawsuit in Lincoln County, Mississippi (the

---

[3] Statement of Financial Affairs at ¶ 21 (TPI Dk. No. 98).

"Lincoln County Suit") regarding the underlying facts that form the basis of this Adversary.

B.   Background

The testimony of Deer established the following facts: (1) Deer and Phillips grew up in the same hometown; (2) Deer considered Phillips a close, personal friend; (3) Deer began to perform legal work for Phillips and TPI in 1999 and continued to perform legal work for them until 2006, although that work began to lessen in 2003; (4) Deer borrowed money from Phillips from time to time; (5) Deer purchased two (2) houses from Phillips or TPI which were partially financed by Phillips; and (6) Deer rented his office space from, and in close proximity to, Phillips.

C.   The Case at Bar

1.   Undisputed Facts

The following facts, taken from the testimony of Gardner and Deer and other evidence presented at the Hearing, are undisputed:

Gardner and Phillips entered into an agreement whereby TPI agreed to sell and Gardner agreed to purchase the Southgate Apartments in Brookhaven, Mississippi (the "Southgate Transaction").  In the first agreement signed by the parties entitled "Contract for Purchase Real Estate," the second numbered paragraph, "Sales Price," provided that Gardner would pay his purchase money "into the escrow account of Peter Chow," an individual in California whom Gardner knew and had chosen. (Hrg. Ex. 1).  The testimony at the Hearing showed that Phillips requested the agreement be changed so that Gardner would pay his purchase money "into the escrow account of Dwayne G. Deer," which change is reflected in Hearing Exhibit 2.[4]  Phillips

---

[4] While the signature page to Hearing Exhibit 2 is missing, the parties stipulated that the contract which comprises Hearing Exhibit 2 was signed by Gardner and Phillips, on behalf of TPI.

supplied Gardner with the wiring instructions for the Dwayne G. Deer Trust Account (the "Dwayne Deer Trust Account")[5].

On three separate occasions, Gardner wired money into the Dwayne Deer Trust Account in connection with the Southgate Transaction. On or about November 14, 2005, Gardner wired $192,000 into the Dwayne Deer Trust Account from his account at the California Credit Union. (Hrg. Ex. 3). On or about November 15, 2005, Gardner wired $108,000 from his account at Kinecta Federal Credit Union to the Dwayne Deer Trust Account. (Hrg. Ex. 5). On or about February 9, 2006, Gardner wired $265,000 into the Dwayne Deer Trust Account, which funds represented the final amount required to close the Southgate Transaction. (Hrg. Ex. 8, 11).

Within approximately twenty-four (24) hours of Gardner wiring funds into the Dwayne Deer Trust Account, Deer transferred funds in the same amounts by check to TPI. Deer testified that he received all of his instructions regarding distribution of Gardner's funds wired from Gardner from Stinson. Stinson called Deer at or near the time of each wire transfer from Gardner, told Deer that funds were being wired into his account, and directed Deer to forward the funds to Phillips. On each such occasion, Deer checked with the bank, determined that the funds had arrived, and wrote a check made payable to TPI from the Dwayne Deer Trust Account. Deer testified that he distributed the funds without any further inquiry. Deer never discussed the distribution of funds with either Gardner or Phillips. Deer never asked that he be provided a copy of a contract, a warranty deed, or any other document regarding the Southgate Transaction. As of the date of the Hearing, Deer had

---

[5] Deer's testimony also established that with regard to other real estate transactions involving Phillips as the seller, Deer had received money into his trust account from third parties and had distributed those funds on instructions from Phillips or Stinson without making inquiries into the facts or the circumstances of those disbursements.

not provided Gardner with an accounting of the money Gardner had wired into the Dwayne Deer Trust Account.

Bank statements admitted into evidence regarding the Dwayne Deer Trust Account show that the funds placed into the account by Gardner were not used by Deer for personal use.[6] (Hrg. Ex. 11). Instead, the bank statements show that Deer transferred funds by check three (3) times to TPI within approximately twenty-four (24) hours of receiving wire transfers in the same amounts from Gardner.[7] Id.

Gardner became concerned when he did not receive a Warranty Deed after wiring the last payment required to purchase the Southgate Apartments. He attempted to contact Phillips regarding the Warranty Deed, but received no return telephone calls from Phillips. At that point, Gardner retained Honea to represent him in the matter.

Until Gardner retained Honea, Gardner did not call or correspond with Deer directly or indirectly. Additionally, Gardner did not provide documents to Deer prior to the Lincoln County Suit being filed. Furthermore, Gardner did not retain Deer as his attorney or meet with him personally.

    2.    Disputed Facts

Honea testified that on or about April 17, 2006, he contacted Deer and told him that he

---

[6] The statements do demonstrate, however, that Deer wrote at least fourteen (14) checks from the Dwayne Deer Trust Account made payable to "Cash" and made at least four (4) additional withdrawals from the Dwayne Deer Trust Account for himself or otherwise presumably for his own benefit.

[7] Check Number 1725 includes in the memo portion of that check the notation, "Southgate/Shelby Gardner" in Deer's handwriting. (Hrg. Ex. 11). As discussed herein, Deer's denial of knowing Gardner's involvement is not credible. *See* pp. 6 - 8 *supra.*

represented Gardner who had not received the Warranty Deed regarding the Southgate Transaction. Honea further testified that when he first contacted Deer, Gardner was still interested in completing the Southgate Transaction and receiving a Warranty Deed from Phillips. According to Honea, Deer did not tell Honea during their first conversation that he no longer had Gardner's money in his Trust Account or that he already had transferred it to Phillips. Honea stated that it was later that Deer admitted that he had transferred the money to Phillips, at which point Honea filed the Lincoln County Suit on behalf of Gardner. Deer disputed this assertion and stated that he told Honea in their first conversation that he had transferred the funds to Phillips.

The Court finds Honea's characterization of events more credible. His testimony is supported by a letter dated June 1, 2006, written by Honea to both Deer and Phillips and entered into evidence at the Hearing. (Hrg. Ex. 12). The letter demonstrates that Honea had contacted Deer and Phillips previously. The letter also expresses Gardner's desire to finalize the Southgate Transaction and Honea's desire to facilitate that transaction. The content and tone of the letter belies Deer's assertion that he already had told Honea that Gardner's money had been transferred to Phillips. Additionally, Honea testified at the Hearing that when he discovered that Deer had transferred Gardner's money to Phillips, he filed the Lincoln County Suit on behalf of Gardner. According to Deer, that suit was filed on September 12, 2006, and not in the spring when Honea first contacted Deer about this matter.

Deer also took the position at the Hearing that he was not the escrow agent for the Southgate Transaction. He pointed to the second numbered paragraph in the Contract for Purchase Real Estate wherein Deer is identified as "a representing attorney for Todd Phillips Investments, Inc." (Hrg. Ex. 2). He stated that he did not know why the Dwayne Deer Trust Account was being used as the

escrow account for the Southgate Transaction. He also testified, however, that when he realized that the Dwayne Deer Trust Account was being used as an escrow account to transfer money from Gardner to Phillips, he made no inquiries about that fact, he did not request to see any documents regarding the Southgate Transaction, nor did he call Gardner regarding the Southgate Transaction. No evidence was presented to suggest that Deer took any action whatsoever to prevent Phillips from using the Dwayne Deer Trust Account as an escrow account for his real estate deals. To the contrary, Deer had knowledge that Phillips was using the Dwayne Deer Trust Account as an escrow account because Stinson would call and tell him that Gardner was wiring money into the Trust Account. Deer then willingly accepted and followed Stinson's instructions and transferred those funds to Phillips.

      3.     The Bar Complaint

Gardner filed a Complaint against Deer with The Mississippi Bar Association (the "Bar") on or about February 5, 2007. (Hrg. Ex. 13). Deer filed a Response to the Complaint (the "Response to Bar Complaint"). Id. In Deer's Response to the Bar Complaint he stated,

> I do not know Mr. Shelby Gardner. I do not believe that Mr. Gardner has ever telephoned my office, written me, nor communicated with me in any way. Mr. Shelby Gardner has never retained my services, nor instructed me to carry out any legal work for him. Last summer, an attorney called me to advise me that he represented Mr. Gardner and asked me if I was holding money regarding a real estate transaction where Mr. Gardner was purchasing property. Apparently, Mr. Gardner had been told by someone else that they would have me hold some money. I told the attorney that I was not holding any money for Mr. Gardner and had no idea that I was supposed to be holding any such money and further that I did not know Mr. Gardner.

Id. This Court cannot reconcile the information presented in the Response to Bar Complaint with the evidence presented at the Hearing. A plain reading of Deer's Response to Bar Complaint would

have led the Bar to believe that Deer did not know who Gardner was and that none of Gardner's money had ever been deposited into the Dwayne Deer Trust Account. In fact, the evidence presented at the Hearing showed that, by the time Deer would have written and signed his Response to Bar Complaint, the following events would have occurred: (1) on three (3) occasions, Gardner wired funds totaling $565,000 to the Dwayne Deer Trust Account; (2) on each occasion, Deer checked with the bank to determine that Gardner's funds had arrived and then forwarded Gardner's funds to Phillips on the instructions of Stinson; (3) Deer wrote on the memo line of check number 1725, "Southgate / Shelby Gardner" in his own handwriting (Hrg. Ex. 11); (4) Honea had contacted Deer on behalf of Gardner regarding the unresolved nature of the Southgate Transaction; (5) Deer had received Honea's demand letter dated June 1, 2006; and (6) Deer had been sued by Gardner in Lincoln County. It is evident Deer failed to inform the Bar that the "someone else" who "apparently" told Gardner that Deer would hold his money was Phillips, Deer's client, close friend, lender, and landlord. Consequently, while Deer would have the Bar believe that the allegations made by Gardner in his Bar Complaint were completely fictitious, this Court finds that Deer misled the Bar.[8]

### III. Issues

In the case at bar, the issues before this Court are: (1) whether Deer owed a fiduciary duty to Gardner; (2) whether Deer breached a fiduciary duty to Gardner; and (3) whether defalcation occurred so that the debt arising therefrom is nondischargeable under § 523(a)(4). This Court finds affirmatively on each issue.

---

[8] The Committee on Professional Responsibility of the Bar dismissed the Bar Complaint. (Hrg. Ex. 13).

### IV. Discussion of the Law

The issue of nondischargeability is a matter of federal law. Grogan v. Garner, 498 U.S. 279, 284 (1991). The standard of proof for the dischargeability exceptions found in § 523(a) is the preponderance of the evidence. Id. at 286.

Under § 523(a)(4), a debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" may not be discharged in bankruptcy. This discharge exception "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." Powers v. Caremark, Inc. (In re Powers), 2008 WL 104272 (5th Cir. 2008) (citing In re Boyle, 819 F.2d 583, 588 (5th Cir. 1987)).

The concept of fiduciary under § 523(a)(4) is a much narrower one than under general common law[9] and "is limited to instances involving express or technical trusts."[10] Texas Lottery Comm'n v. Tran (In re Tran), 151 F.3d 339, 342-43 (5th Cir. 1998) (citing Chapman v. Forsyth, 43 U.S. 202 (1844)). Thus, the fiduciary's obligations must have arisen prior to, rather than by virtue

---

[9] The term "fiduciary" is defined as "a person who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, trust, confidence and candor; one who must exercise a high standard of care in managing another's money or property." Black's Law Dictionary, 658 (8th ed. 2004).

[10] The term "express trust" is defined as "a trust created with the settlor's intent, usu. declared in writing; an ordinary trust as opposed to a resulting or constructive trust." Black's Law Dictionary, 1548 (8th ed. 2004). "Passive trust" is defined as "a trust in which the trustee has no duty other than to transfer the property to the beneficiary." Black's Law Dictionary, 1550 (8th ed. 2004).

of, any claimed wrongdoing. Davis v. Aetna Acceptance Co., 293 U.S. 328, 333 (1934). Constructive trusts or trusts *ex malificio*[11] will fall short of the requirements of § 523(a)(4). Id.

The Fifth Circuit has defined defalcation as "willful neglect of duty, even if not accompanied by fraud or embezzlement." In re Schwager, 121 F.3d 177, 182 (5th Cir. 1997) (quoting In re Moreno, 892 F.2d 417 (5th Cir. 1990)). When discussing the type of intent or mental state necessary for a finding of defalcation, Judge Learned Hand stated, "Colloquially perhaps the word, 'defalcation,' ordinarily implies some moral dereliction, but in this [bankruptcy] context it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts." Central Hanover Bank & Trust Co. v. Herbst, 93 F.2d 510, 511 (2nd Cir. 1937). Citing Judge Hand favorably in In re Schwager, the Fifth Circuit held,

> While defalcation may not require actual intent, it does require some level of mental culpability. It is clear in the Fifth Circuit that a "willful neglect" of fiduciary duty constitutes defalcation – essentially a recklessness standard.

121 F.3d at 185.

As an attorney licensed to practice in the State of Mississippi, Deer is bound by the Mississippi Rules of Professional Conduct. Rule 1.15(j) of the Mississippi Rules of Professional Conduct ("MRPC 1.15") states, "A lawyer may not use, endanger, or encumber money held in trust for a client or third person without the permission of the owner given after full disclosure of the circumstances." The Comment to MRPC 1.15 states, "A lawyer should hold property of others with the care required of a professional fiduciary." This Comment further states, "The obligations of a lawyer under this Rule are independent of those arising from activity other than rendering legal

---

[11] The term *ex maleficio* is defined as "by malfeasance" or "tortious." Black's Law Dictionary, 615 (8th ed. 2004).

services. For example, a lawyer who serves as an escrow agent is governed by the applicable law relating to fiduciaries even though the lawyer does not render legal services in the transaction."

## V. Application of the Law to the Facts

Deer owed Gardner a fiduciary duty to safeguard the funds Gardner had wired into the Dwayne Deer Trust Account for the following reasons. *See* MRPC 1.15(j). First, despite Deer's assertion otherwise, this Court finds that Deer indeed was acting as an escrow agent. Deer's argument that he was not acting as escrow agent but as Phillip's attorney is misplaced. The "Contract for Purchase Real Estate" provided that Gardner was to wire his payments for the property into "the escrow account of Dwayne G. Deer, a representing attorney for Todd Phillips Investments, Inc." (Hrg. Ex. 2, emphasis added). The evidence showed that Deer had actual knowledge Gardner had wired money into the Dwayne Deer Trust Account in connection with the Southgate Transaction[12] and that Gardner then distributed those funds to Phillips pursuant to Stinson's instructions. In doing so, he assumed the role of escrow agent and the legal and ethical responsibilities which accompany that role.

Having already performed, however recklessly, as the escrow agent on the Southgate Transaction, he cannot now deny his fiduciary obligations. If Deer had not wanted to assume the responsibilities of an escrow agent, he could have returned the money sent by Gardner to its originating account, or he could have told Phillips he refused to serve as escrow agent. He did neither. As an escrow agent, Deer had a fiduciary obligation to safeguard the funds Gardner had wired to the Dwayne Deer Trust Account and to disburse them only after determining that all conditions appropriate for disbursement had been met. Here, Deer should have retained the funds

---

[12] *See* note 7, *infra*.

in the Dwayne Deer Trust Account until the Warranty Deed to the Southgate Apartments had been prepared and delivered to Gardner.

Second, Deer is a licensed attorney in the State of Mississippi. Even if Deer were not acting as an escrow agent, Deer had a fiduciary obligation regarding the money in the Dwayne Deer Trust Account pursuant to the MRPC 1.15 governing attorneys. This statement is true even if that money belonged to a third person as opposed to a client. Deer voluntarily distributed Gardner's funds to Phillips without the permission of Gardner and without full disclosure of the circumstances in violation of MRPC 1.15.

Deer's fiduciary duty falls within the concept of fiduciary under § 523(a)(4) since an "express or technical trust" was created when Gardner wired money into the Dwayne Deer Trust Account pursuant to the terms of the Contract for Purchase Real Estate (Hrg. Ex. 2), and Deer's fiduciary obligation arose prior to rather than by virtue of his wrongdoing. Additionally, Deer acted recklessly with regard to the Dwayne Deer Trust Account in the following ways despite being a practicing attorney for ten (10) years and having experience with real estate transactions:

1. Deer knew that Gardner had wired funds into the Dwayne Deer Trust Account, but he never attempted to contact Gardner about those funds;

2 Deer made no attempt to talk to Phillips about his use of the Dwayne Deer Trust Account in connection with his real estate transactions in general or the Southgate Transaction specifically;

3. Deer did not request any information from either Gardner or Phillips regarding the Southgate Transaction before distributing Gardner's funds to Phillips;

4.     Deer did not request any documentation from either Gardner or Phillips regarding the Southgate Transaction before distributing Gardner's funds to Phillips;

5.     Deer made no attempt to verify that the Southgate Transaction had closed or that a Warranty Deed had been prepared and sent to Gardner before distributing $565,000 of Gardner's money to Phillips; and,

6.     Deer distributed a total of $565,000 of Gardner's money to Phillips based solely on the oral representations and instructions of Stinson.

### VI. Conclusion

In short, Deer allowed Phillips to use the Dwayne Deer Trust Account for the transfer of funds without so much as an attempt to verify the legitimacy of a single distribution – without even a scintilla of due diligence. Deer's actions demonstrated a "willful neglect" of his fiduciary duty to Gardner to safeguard the funds in the Dwayne Deer Trust Account. These actions constitute defalcation so as to render the $565,000 debt Deer owes Gardner nondischargeable under § 523(a)(4).

A separate final judgment consistent with this Memorandum Opinion will be entered by this Court in accordance with Federal Rules of Bankruptcy Procedure 7054 and 9021.

IT IS THEREFORE ORDERED that the Adversary Complaint hereby is granted as set forth herein.

SO ORDERED,